**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RYAN SMITH, individually and on behalf of all others
similarly situated,

                              Plaintiff,

                                                              6:22-cv-788 (BKS/ML)

v.

Adidas America, Inc.,

                              Defendant.

**Appearances:**

*For Plaintiff:*
Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Road, Suite 412
Great Neck, New York 11021

*For Defendant:*
Stanton R. Gallegos
Matthew A. Levin
Jermaine F. Brown
Markowitz Herbold PC
1455 SW Broadway, Suite 1099
Portland, Oregon 97201

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Ryan Smith brings this putative class action against Defendant Adidas America,

Inc. (Dkt. No. 1.) Plaintiff asserts, individually and on behalf of two putative classes, claims

under New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350, and the "Consumer

Fraud Acts" of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska; claims

for breaches of express warranty, implied warranties of merchantability and fitness for a

particular purpose, and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.; and claims for common-law negligent misrepresentation, fraud, and unjust enrichment. (Dkt. No. 1, at 14–21.) Plaintiff seeks class certification and compensatory and punitive damages, including statutory damages. (*Id.* at 21–22.)[1] Presently before the Court is Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 7.) The motion is fully briefed. (Dkt. Nos. 11, 13.) For the following reasons, the Court grants in part and denies in part Defendant's motion to dismiss.

## II.    FACTS[2]

Defendant is an Oregon corporation with a principal place of business in Portland, Oregon, and is "known as a leader in sportswear." (Dkt. No. 1, ¶¶ 60, 66, 110, 129.) Defendant "manufactures, labels, markets, and sells NHL (National Hockey League) jerseys" and is the "official manufacturer of the jerseys worn on the ice by NHL players." (*Id.* ¶¶ 1, 69, 110, 129.) Defendant identifies at least some of the NHL jerseys it manufactures and sells as "authentic," (*id.* ¶¶ 1, 24, 106–08), and "[o]n its website . . . and in digital, print, radio and/or television marketing, Defendant promotes the jerseys as authentic through labeling, hang tags, and descriptions," (*id.* ¶ 22). Plaintiff also describes its "authentic" jerseys on its website as "the same as the one[s] . . . players wear when the puck drops." (*Id.* ¶ 24 & n.4.) "Authentic" jerseys are available to consumers from Defendant's retail stores and website and from third-party retail stores and websites and are sold "at a premium price" of approximately $179.99. (*Id.* ¶¶ 56, 71.)

---

[1] Plaintiff initially sought injunctive relief as well, (*id.* at 15), but has withdrawn that request, (Dkt. No. 11, at 1 n.1).

[2] These facts are drawn from the complaint. (Dkt. No. 1.) The Court assumes the truth of and draws reasonable inferences from the well-pleaded factual allegations, *see Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff, a citizen of New York, (*id.* ¶ 59), purchased an "authentic" jersey within New York and "within the statutes of limitations for each cause of action alleged[] at stores and/or websites, including the website of Defendant, adidas.com[,] and NHL.com, over the past three years[] and/or among other times." (*Id.* ¶¶ 64, 72.) In purchasing the jersey, Plaintiff "read, reviewed, and relied on Defendant's representations that the jerseys '[were] the same as the one[s] . . . players wear when the puck drops' on the ice." (*Id.* ¶ 74 (first two alterations in original).) Plaintiff also "relied on the words, descriptions, layout, tags, images, and website descriptions on Defendant's site and those of its third-party partners, about its authentic jerseys." (*Id.* ¶ 77.) Plaintiff "understood ['authentic' jerseys] as being the same jersey[s] that NHL players wear during hockey games." (*Id.* ¶ 73.) "Plaintiff bought the [jersey] because he expected it was authentic[] and the same jersey that NHL players wear during hockey games, from the fight strap to the dimples to the stitching and the fit, because that is what the representations said and implied." (*Id.* ¶ 76.)

But the "authentic" jerseys "are not those worn on-ice by NHL players." (*Id.* ¶ 29.) The "authentic" jerseys differ from on-ice jerseys in several aspects: the quality of the "fight strap" of the "authentic" jerseys is inferior as compared to the fight strap of on-ice jerseys, (*id.* ¶¶ 30–32); the fabric of the "authentic" jerseys is half the thickness of the fabric of the on-ice jerseys, (*id.* ¶¶ 33–34); the stitching of the "authentic" jerseys is weaker and less durable than the stitching of the on-ice jerseys, (*id.* ¶¶ 35–36); the neck holes of the "authentic" jerseys are larger than the neck holes of the on-ice jerseys, (*id.* ¶ 37); the air-flow dimples of the "authentic" jerseys are smaller and less effective than the air-flow dimples of the on-ice jerseys, (*id.* ¶¶ 38–42); the logos, numbers, stripes, and names on the "authentic" jerseys are applied via heat pressing while

those features of the on-ice jerseys are double-stitched, (*id.* ¶ 43); and the "authentic" jerseys are manufactured in Indonesia while the on-ice jerseys are manufactured in Canada, (*id.* ¶ 44).

Other consumers shared Plaintiff's interpretation of "authentic." (*Id.* ¶¶ 20, 24, 28, 100.) Specifically, "a website devoted to covering the San Jose Sharks, TealTownUsa.com, published an article by AJ Strong, entitled, 'Stop Calling Adidas NHL Jerseys Authentic,' in June 2021." (*Id.* ¶ 116.) In the article, the author "detailed facts about why 'it's disingenuous and misleading for [Defendant] to call [the jerseys] "authentic" or "authentic pro"' and recommended '[Defendant] [] call[] those jerseys what they are… replicas,'" and "notified [Defendant] that the price of c. $179 was $50 greater than what comparable replica NHL jerseys are sold for." (*Id.* ¶¶ 117–18.) Additionally, a "well-known memorabilia and video game blogger known as 'REZRECTION[]' notified [Defendant] of similar issues identified by Strong" and "isolated numerous ways in which the authentic Adidas NHL jerseys were deficient compared to the on-ice jerseys." (*Id.* ¶¶ 119–21.) He also "cautioned his viewers to be careful about paying almost as much for the authentic jerseys as the on-ice jerseys would cost, given what he described as stark differences in quality." (*Id.* ¶ 122.)

Had Plaintiff known that "authentic" jerseys were not those worn on the ice by NHL players during games, he "would not have bought the jerseys or would have paid less for them." (*Id.* ¶¶ 55, 80, 82, 98, 127, 135.)

Plaintiff proposes the following classes:

> **New York Class**: All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota and Nebraska, who purchased the Product during the statutes of limitations for each cause of action alleged.

(*Id.* ¶ 83.)

## III.   STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## IV.   ANALYSIS

### A.   Matters Outside the Pleadings

A court may refer to evidence outside the pleadings in resolving jurisdictional issues raised under Rule 12(b)(1). *See Krajisnik Soccer Club*, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5. But "[g]enerally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), and "documents attached to the complaint as exhibits," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Faulkner*, 463 F.3d at 134. A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the document[]." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, No. 21-cv-9336, 2022 WL 4815615, at *20, 2022 U.S. Dist. LEXIS 181044, at *64 (S.D.N.Y. Sept. 30, 2022) (quoting *McKeefry v. Town of Bedford*, 2019 WL 6498312, at *3, 2019 U.S. Dist. LEXIS 207874, at *7 (S.D.N.Y. Dec. 2, 2019)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia*, 834 F.3d at 230 (quoting *DiFolco v.*, 622 F.3d at 111 (internal quotation marks omitted)). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in

original). Rather, the contents of a document must "appear to have been necessary to the 'short and plain statement of the claim showing that [a plaintiff is] entitled to relief.'" *Lateral Recovery*, 2022 WL 4815615, at *20, 2022 U.S. Dist. LEXIS 181044, at *64 (alteration in original) (quoting *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008)). That is, "'[a] necessary prerequisite' to a finding that materials are integral to a complaint 'is that the "plaintiff[] rel[y] on the terms and effect of [the] document in drafting the complaint.'" *Id.*, 2022 WL 4815615, at *20, 2022 U.S. Dist. LEXIS 181044, at *65 (alteration in original) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)). However, even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

In support of its motion to dismiss, Defendant has attached a copy of an online article entitled "Stop Calling Adidas NHL Jerseys Authentic" from the website "TealTownUsa.com" by AJ Strong, (Dkt. No. 7-2, at 2–8), which Plaintiff cites in his complaint, (Dkt. No. 1, ¶¶ 20 n.3, 116–18, 123). The complaint also cites a video entitled "Do Not Buy Adidas NHL Authentic Hockey Jerseys Before Watching This Video! What You Need To Know!" by a "well-known memorabilia and video game blogger" referred to as "REZRECTION." (*Id.* ¶ 119.) Defendant cites this video in its reply memorandum and includes a hyperlink. (Dkt. No. 13, at 6–7.)

Plaintiff relies on these documents in support of his assertion that Defendant "was notified by several sources" of the issues with its description of the jerseys, (*id.* ¶ 115–17), and that "Defendant received notice and should have been aware of these issues due to complaints by third-parties, including . . . consumers, to its main offices, and by consumers through online forums"; and that "[t]he Product did not conform to its affirmations of fact and promises due to Defendant's actions," (*id.* ¶¶ 114, 124).[3] Defendant, meanwhile, argues that these sources demonstrate that "the physical differences [in jerseys] are . . . widely known among hockey enthusiasts," (Dkt. No. 7-1, at 17–19), and that "a reasonable consumer would not view the retail 'authentic' jerseys as identical to the on-ice 'pro stock' jerseys, because it is widely known that the two have not been the same for at least 15 years," (Dkt. No. 13, at 7). Thus, it is clear that the parties dispute the relevance of these sources, and therefore, the Court will not consider them, beyond considering the allegations in the complaint, because there exist "material disputed issues of fact regarding the relevance of the document[s]." *See Faulkner*, 463 F.3d at 134.

## B.    Subject-Matter Jurisdiction

Defendant argues that the Court lacks subject-matter jurisdiction to hear Plaintiff's Magnuson-Moss Warranty Act ("MMWA") claim because the MMWA requires that class actions include one hundred or more named plaintiffs, and the instant action has only one named plaintiff. (Dkt. No. 7-1, at 26.) Plaintiff responds that Defendant's argument is misplaced because Plaintiff has invoked jurisdiction under the Class Action Fairness Act ("CAFA"), not the MMWA. (Dkt. No. 11, at 19.)

The MMWA states:

---

[3] Plaintiff cites other hockey-related articles and sources in the complaint, (*see, e.g.*, Dkt. No. 1, ¶¶ 4, 46 nn.1, 5 ), but does not make clear, definite, and substantial references to those sources or use those sources to support allegations necessary to state a claim. Accordingly, the Court finds no basis to consider them here.

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[:] (A) in any court of competent jurisdiction in any State or the District of Columbia; or[] (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

15 U.S.C. § 2310(d)(1). This provision is limited by § 2310(d)(3), which states, in relevant part, that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(C).

The CAFA, meanwhile, provides district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A).

The question, then, is "whether the MMWA's specific jurisdictional limitations trump CAFA's authorization of federal jurisdiction over otherwise qualifying class actions." *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015).

In the most recent in-circuit decision to consider the issue, Judge Failla thoroughly surveyed existing caselaw and concluded that "CAFA does not provide a workaround to the MMWA's federal jurisdictional requirements." *See Ghaznavi v. De Longhi Am., Inc.*, No. 22-cv-1871, 2023 WL 4931610, at *9–10, 2023 U.S. Dist. LEXIS 133730, at *24, 28 (S.D.N.Y. Aug. 2, 2023). Judge Failla also undertook analyses of the "text, structure, and history" of the two statutes, which led to the conclusion that "the MMWA is the exclusive source of federal jurisdiction over federal warranty claims." *Id.*, 2023 WL 4931610, at *9, 2023 U.S. Dist. LEXIS 133730, at *25. This conclusion is further supported by decisions of the Third and Ninth

Circuits. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182–83 (3d Cir. 2023); *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1032–35 (9th Cir. 2020). The Court joins Judge Failla—along with the Third and Ninth Circuits—in concluding that the "CAFA does not displace the MMWA's stringent federal jurisdictional requirements." *See Ghaznavi*, 2023 WL 4931610, at *10, 2023 U.S. Dist. LEXIS 133730, at *29.

Here, because there is only one named plaintiff, the Court lacks jurisdiction to hear Plaintiff's MMWA claim. Accordingly, Plaintiff's MMWA claim is dismissed for lack of subject-matter jurisdiction.

### C.  Failure to State a Claim

#### 1.  New York General Business Law Sections 349 and 350

Defendant argues that Plaintiff's claims under sections 349 and 350 of the New York General Business Law should be dismissed because Plaintiff has not alleged any deceptive conduct through Defendant's use of the word "authentic" and the alleged differences between the "retail and NHL jerseys that form the basis of [P]laintiff's claims were easily discoverable." (Dkt. No. 7-1, at 13–18.)[4] Plaintiff argues that he has alleged deceptive conduct through Defendant's use of the word "authentic," that use of the word "authentic" promised specific attributes, and that Plaintiff's understanding of the word "authentic" was reasonable and not subjective. (Dkt. No. 11, at 12–15.)[5]

---

[4] Defendant also suggests that Plaintiff's claims under sections 349 and 350 should be dismissed because Plaintiff has not pleaded that his purchase or purchases occurred in New York. (Dkt. No. 13, at 12 n.2.) This argument is unavailing because Plaintiff *has* pleaded that his purchase occurred in New York. (Dkt. No. 1, ¶ 64.)

[5] Plaintiff also argues that Rule 9(b) of the Federal Rules of Civil Procedure is inapplicable to claims under sections 349 and 350 of the New York General Business Law. (*Id.* at 9–11.) While this is correct, at least with regard to claims under section 349, *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005), Defendant does not raise this argument with regard to Plaintiff's claims under sections 349 and 350, (Dkt. No. 7-1, at 10–13).

Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). Section 350, meanwhile, prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service." *Id.* § 350. Thus, section 349 "involves unlawful deceptive acts and practices," while section 350 "involves unlawful false advertising." *See Bardsley*, 2022 WL 814034, at *7, 2022 U.S. Dist. LEXIS 47104, at *19. But both laws were "designed to protect consumers against deception and false advertising." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 323 (2002)). And "[t]he standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to [s]ection 349." *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (App. Div. 2010) (quoting *Goshen*, 98 N.Y.2d at 324 n.1). Thus, claims under these laws are analyzed together. *See MacNaughton*, 67 F.4th at 96. To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

Defendant has not challenged the sufficiency of the complaint with respect to consumer-oriented conduct or the injury suffered by Plaintiff. Thus, the question before the Court is whether Defendant's conduct as alleged by Plaintiff amounts to "deceptive or materially misleading acts or practices." *See Denenberg*, 897 N.Y.S.2d at 395 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).

To plead deceptive or materially misleading acts or practices, a plaintiff must plausibly allege that a defendant's act or conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214*, 85 N.Y.2d at 26; *see also Orlander*, 802 F.3d at 300. "Plausibility in this context 'demands "more than a sheer possibility that a defendant acted unlawfully"' and considers 'the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 580–81 (S.D.N.Y. 2021) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

In determining whether a product's advertising is misleading, courts must apply an "objective test," *see id.* at 581, and "context is crucial," *see Fink*, 714 F.3d at 742. That is, "[i]n determining whether a reasonable consumer would be misled, '[c]ourts view each allegedly misleading statement in light of its context [i]n the . . . advertisement as a whole.'" *See Bardsley,* 2022 WL 814034, at *7, 2022 U.S. Dist. LEXIS 47104, at *19–20 (quoting *Pichardo v. Only What You Need, Inc.*, 20-cv-493, 2020 WL 6323775, at *2, 2020 U.S. Dist. LEXIS 199791, at *4–5 (S.D.N.Y. Oct. 27, 2020)).

While it is well-settled that a court may determine at the motion to dismiss stage that an allegedly deceptive misrepresentation would not have misled a reasonable consumer as a matter of law, *see Colpitts*, 527 F. Supp. 3d at 581 (citing *Fink*, 714 F.3d at 741), such a determination should be made sparingly "because the question of whether a representation is materially misleading 'is generally a question of fact not suited for resolution at the motion to dismiss stage,'" *see id.* (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020)).

Here, drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged that Defendant's representations of its jerseys could mislead a reasonable consumer to believe that the jerseys are the same as those worn on-ice by NHL players. Plaintiff relies heavily on Defendant's use of the word "authentic." (Dkt. No. 1, ¶¶ 1, 22–24.) Defendant argues that Plaintiff's understanding of the term "authentic" is subjective and that because Defendant is the official manufacturer of NHL jerseys, any jersey it manufactures is, by definition, authentic. (Dkt. No. 7-1, at 13–15.) Plaintiff concedes that Defendant is the "official manufacturer of NHL jerseys," (Dkt. No. 1, ¶ 129), and Defendant seizes on that allegation as proof that its representation of its jerseys as "authentic" is "truthful" and therefore unactionable under sections 349 and 350, (Dkt. No. 7-1, at 13–14). But it is not necessarily the case that a reasonable consumer would believe "authentic" is synonymous with "officially licensed." (*Id.* at 13.) While Defendant's interpretation of "authentic" as synonymous with "officially licensed" may be one interpretation of the term, it is not such an "obvious" interpretation that "renders [P]laintiff's inferences unreasonable." *See Colpitts*, 527 F. Supp. 3d at 581. Indeed, it is plausible to infer from the allegation that Plaintiff "understood ['authentic' jerseys] as being the same jersey[s] that NHL players wear during hockey games," not as merely being manufactured by the official manufacturer of NHL jerseys, (Dkt. No. 1, ¶ 73), but that Plaintiff and other consumers, acting reasonably, were misled by Defendant's use of the term "authentic." (*Id.* ¶¶ 12, 20 & n.3, 21, 116–22.)[6]

---

[6] Defendant makes the argument, on the one hand, that the sources Plaintiff cites in the complaint that demonstrate that consumers were misled are "obscure internet sources" and "little more than one-off complaints about quality," (Dkt. No. 13, at 6–7), before asserting, on the other hand (and in the same paragraph), that these sources "demonstrate that a reasonable consumer would not view the 'authentic' jerseys as identical to the on-ice 'pro stock' jerseys" worn by the players "because it is widely known that" Defendant's "authentic jerseys" are not the same as "pro stock" jerseys, (*id.* at 7). This, however, presents an issue of fact that the Court is unable to resolve at this stage. *See, e.g., Casio v. Vineyard Vines, LLC*, No. 19-cv-5135, 2021 WL 466039, at *3, 2021 U.S. Dist. LEXIS 25115, at *6 (E.D.N.Y. Feb. 9, 2021) (noting that at the motion to dismiss stage "the Court is unable to determine how a reasonable consumer would perceive" price tags in an outlet store that state a "suggested retail" price).

In *Casio*, the court examined whether the term "retail" was misleading as applied to goods sold in outlet, as opposed to retail, stores. *See* 2021 WL 466039, at *4, 2021 U.S. Dist. LEXIS 25115, at *11. The plaintiffs in *Casio* alleged that the inclusion of "retail" on the price tag of clothing and accessories the defendant sold in its outlet stores "represent[ed] to consumers that the quality of the items offered in the Outlet Stores [was] identical to the quality of the items offered in its Retail Stores." *See id.*, 2021 WL 466039, at *2, 2021 U.S. Dist. LEXIS 25115, at *2. The court found that the plaintiffs had plausibly pleaded that some consumers could have interpreted the terminology to mean that the products sold at outlet stores were of similar quality to products offered in the "retail" or "boutique" stores. *See id.*, 2021 WL 466039, at *4, 2021 U.S. Dist. LEXIS 25115, at *10. Thus, the court concluded that it could not "determine as a matter of law that the term 'retail' as used on the price tags [wa]s . . . clear and unambiguous" and that the plaintiffs had therefore adequately pleaded that the use of the word "retail" in the context of the outlet price tags was misleading. *See id.*, 2021 WL 466039, at *4, 2021 U.S. Dist. LEXIS 25115, at *10–11. So too here. Just as the plaintiff in *Casio* alleged that there existed two classes of goods—"outlet" and "retail"—and that use of "retail" to advertise the lesser quality "outlet" good was misleading, Plaintiff here alleges the existence of two classes of jerseys and that use of the descriptor "authentic" to describe the lesser quality jersey that was not worn on-ice by NHL players was misleading.

Furthermore, Defendant disregards the relevant context that informs Plaintiff's—and any reasonable consumer's—understanding. Plaintiff does not rely *solely* on Defendant's use of the term "authentic." Rather, Plaintiff alleges that Defendant markets its jerseys as "authentic" and describes them as "the same as the one[s] [NHL] players wear when the puck drops" before alleging the myriad ways in which the jerseys marketed by Defendant as "authentic" differ from

those worn by NHL players, such as the differing fight straps, fabric thickness, stitching, neck

holes, air-flow dimples, application of logos, numbers, stripes, and names, and countries of

manufacture. (Dkt. No. 1, ¶¶ 24, 29–44, 50.)[7] There is no "alternative explanation" of

Defendant's description of its "authentic" jerseys as "the same as the one[s] [NHL] players wear

when the puck drops" that "render[s] [P]laintiff's inferences unreasonable." *See Colpitts*, 527 F.

Supp. 3d at 581. Plaintiff plausibly alleges that Defendant's representations are objectively

misleading, and a reasonable consumer acting reasonably under the circumstances was likely to

be misled. *See Oswego Laborers' Local 214*, 85 N.Y.2d at 25.

Defendant's argument that Plaintiff's section 349 and section 350 claims must be

dismissed because any differences between the jerseys at issue and those worn on-ice by NHL

players were easily discoverable is misplaced. That principle is applicable to claims based on

omissions, but not, as are at issue here, affirmative statements, and Defendant points to no

authority to the contrary. *See Colangelo v. Champion Petfoods USA, Inc.*, No. 18-cv-1228, 2022

WL 991518, at *26, 2022 U.S. Dist. LEXIS 60489, at *84–85 (N.D.N.Y. Mar. 31, 2022)

("[W]hen 'alleging a deceptive act based on an omission, it is not sufficient for a plaintiff to

point solely to the omission. Instead, the plaintiff must show why the omission was deceptive by

alleging that the information omitted was solely within the defendant's "possession or that a

consumer could not reasonably obtain such information."'" (quoting *Dimond v. Darden Rests.,*

*Inc.*, No. 13-cv-5244, 2014 WL 3377105, at *13, 2014 U.S. Dist. LEXIS 94004, at *44

---

[7] Defendant suggests that Plaintiff's citation of Defendant's website with specific regard to Edmonton Oilers jerseys
is somehow detrimental to Plaintiff's claim because he did not allege that he purchased an Edmonton Oilers jersey or
that the Edmonton Oilers jerseys sold on Defendant's website differ from on-ice jerseys. (Dkt. No. 7-1, at 16.)
Plaintiff alleges that "[t]he representations for the [Edmonton Oilers] are substantially similar or identical to those
made for all NHL teams." (Dkt. No. 1, ¶ 24 n.4.) Thus, regardless of the team represented by the jersey purchased,
Plaintiff's allegations, taken as true, are sufficient to establish that Defendant represented the jersey Plaintiff purchased
as an on-ice jersey. The Court need not examine third-party statements alleged by Plaintiff, (Dkt. No. 1, ¶¶ 8–11 &
n.2), because Plaintiff's allegations of Defendant's statements are sufficient to plausibly allege claims under sections
349 and 350.

(S.D.N.Y. July 9, 2014))), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, No. 22-962, 2023 WL 3829559, 2023 U.S. App. LEXIS 13982 (2d Cir. June 6, 2023); *see also Oswego Laborers' Local 214*, 85 N.Y.2d at 26 ("In the case of omissions in particular—the subject of the present case—[section 349] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information.").

Accordingly, the Court finds that Plaintiff has plausibly alleged that the use of the term "authentic" was misleading, and therefore denies Defendant's motion to dismiss the claims under sections 349 and 350 of the New York General Business Law.[8]

### 2. Consumer Fraud Acts of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska

Defendant argues that Plaintiff's claims under the "Consumer Fraud Acts" of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska should be dismissed because Plaintiff "has not identified the specific claims, provisions, or theories of liability he purports to invoke under each jurisdiction's laws." (Dkt. No. 7-1, at 18–19.) Plaintiff alleges that "the Consumer Fraud Acts of [Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska] are similar to [sections 349 and 350 of the New York General Business Law] and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce." (Dkt. No. 1, ¶ 99.) Plaintiff further alleges that "Defendant intended that each of the members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct." (*Id.* ¶ 100.) Neither party has

---

[8] Because the Court finds Plaintiff has sufficiently alleged that Defendant's use of the term "authentic" was misleading, the Court does not consider Plaintiff's estoppel argument. (Dkt. No. 11, at 11–12.)

identified or specifically addressed the relevant consumer fraud acts of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota or Nebraska, and neither party cited relevant in-circuit caselaw.

The Court finds that Plaintiff's failure to identify the relevant state-law statutes or otherwise identify the applicable state law theories of liability provides Defendant with insufficient notice of the claims against it. *See Szczubelek v. Cendant Mortg. Corp.*, No. 00-cv-2858, 2001 WL 34875217, at *3, 2001 U.S. Dist. LEXIS 26110, at *7–9 (D.N.J. June 15, 2001) ("While Plaintiff correctly asserts that she is not required to allege, in detail, the specific elements of each [consumer fraud] statute for each jurisdiction . . . , the Court finds that Plaintiff's method of pleading the [consumer fraud] law of every state does not provide [Defendant] fair notice of the claims asserted against it." (citations omitted)); *cf. Hoffmann v. Kashi Sales, L.L.C.*, No. 21-cv-9642, 2022 WL 17823171, at *5, 2022 U.S. Dist. LEXIS 229070, at *13 (S.D.N.Y. Dec. 20, 2022) (denying a motion to dismiss claims under multiple states' consumer-protection statutes where the parties agreed that the other state statutes have a "reasonable consumer" standard similar to GBL 349 and 350 and plaintiff had "plausibly alleged a reasonable consumer could be misled by the representations on [a] [p]roduct's packaging"). Accordingly, Plaintiff's claims under the "Consumer Fraud Acts" of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska are dismissed.

### 3. Breach of Express Warranty

Defendant argues that Plaintiff's claim for breach of express warranty should be dismissed because Plaintiff failed to give notice of a breach of warranty to Defendant and because an express warranty "cannot be based on a person's subjective belief concerning the promised result." (Dkt. No. 7-1, at 20–23.) Plaintiff argues that notice is not required for retail sales, or, in the alternative, that Plaintiff has provided notice to Defendant through filing the

instant action,[9] and that Plaintiff's description of the jerseys as "'authentic' was an 'affirmation of fact'" and was therefore not a matter of subjective belief. (Dkt. No. 11, at 17–18.)

"An express warranty is an 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'" *Dwyer*, 598 F. Supp. 3d at 155 (quoting N.Y. U.C.C. § 2-313(1)(a)). To state a claim for breach of an express warranty under New York law, a plaintiff must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (quoting *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 249 (S.D.N.Y. 2021)). Additionally, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See* N.Y. U.C.C. § 2-607(3)(a); *see also Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) ("[I]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013))). Furthermore, "timely notice is a condition *precedent* to bringing

---

[9] In his opposition to Defendant's motion to dismiss, Plaintiff does not address Defendant's arguments that (1) conclusory allegations that Plaintiff has "provided or will provide notice to Defendant" is insufficient, and (2) Plaintiff cannot rely on notice provided by third parties. (Dkt. No. 7-1, at 20–21.) Both of Defendant's contentions are correct. First, Plaintiff alleges that he "provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees," (Dkt. No. 1, ¶ 112), but provides no factual support for this statement. Plaintiff's allegation is too conclusory and non-specific to adequately plead the required notice. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 155 (S.D.N.Y. 2022) (finding unsupported allegations that a plaintiff "provided or will provide notice," which were identical to those now before the Court and in a complaint filed by Plaintiff's counsel in this action, insufficient to plead notice). Second, Plaintiff alleges that "Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums." (Dkt. No. 1, ¶ 114.) This allegation is insufficient to plead notice because it "would not constitute notice by the buyer," as required by New York law. *See Dwyer*, 598 F. Supp. 3d at 155 ("The plain language of N.Y. U.C.C. § 2-607(3)(a) makes clear that '*the buyer* must notify the seller of breach or be barred from any remedy.' Therefore, [p]laintiff *herself* was required to notify [defendant] of the alleged breach before bringing the claim herein." (alterations in original) (quoting *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 245 (S.D.N.Y. 2021))).

an action for breach of warranty." *Lugones*, 440 F. Supp. 3d at 245 (emphasis in original) (citation omitted). And while there are contexts in which the notice requirement does not apply, those contexts are limited to instances in which a party alleges that a product sold at retail causes physical injury in addition to economic injury or where the product is intended for human consumption. *See Dwyer*, 598 F. Supp. 3d at 155 ("Plaintiff's contention that the notice requirement does not apply to retail sales does not save her claim; even the cases that adopt that minority view do so only 'when a party alleges physical, in addition to economic, injury . . . .'" (quoting *Colpitts*, 527 F. Supp. 3d at 589)); *Tomasino v. Estee Lauder Cos., Inc.*, No. 13-cv-4692, 2015 WL 4715017, at *4, 2015 U.S. Dist. LEXIS 103991, at *9 (E.D.N.Y. Aug. 7, 2015) ("[T]he [notice] exception does not apply to the present case, however, because the exception has been applied in cases involving products for human consumption, particularly those that are edible."); *see also Lugones*, 440 F. Supp. 3d at 245 ("The Court agrees with its sister courts' analysis of the New York cases regarding this exception, and finds that it is inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach.").

Here, Plaintiff's argument that notice of the alleged breach of warranty was not required is without merit. Plaintiff cites *Gavilanes v. Gerber Products Co.*, No. 20-cv-5558, 2021 WL 5052896, at *7, 2021 U.S. Dist. LEXIS 210566, at *16–17 (E.D.N.Y. Nov. 1, 2021), for the proposition that "notice requirements for breaches of warranty have long been jettisoned in New York state." (Dkt. No. 11, at 17.) But *Gavilanes* involved a product intended for human consumption—a milk-based powder marketed for twelve- to twenty-four-month-old children. *Id.*, 2021 WL 5052896, at *1, 2021 U.S. Dist. LEXIS 210566, at *1–2.[10] Plaintiff does not cite

---

[10] Furthermore, *Gavilanes* relies on a case involving another product for human consumption—cigarettes, *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *1, 2000 U.S. Dist. LEXIS 22223, at *2 (N.D.N.Y.

any case that suggests the notice exception for breaches of warranty has been or should be extended to claims involving a product not intended for human consumption. Nor has Plaintiff alleged any physical injury associated with the alleged breach of warranty. Thus, no notice exception for breach of warranty applies, and Plaintiff was required to give notice of Defendant's alleged breach of warranty.

Even so, Plaintiff argues, the filing of the present suit provided the requisite notice. (Dkt. No. 1, ¶ 113.) In support of this argument, Plaintiff relies on *Tomasino v. Estee Lauder Cos. Inc.*, which noted that "New York cases applying N.Y. U.C.C. § 2–607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases." 44 F. Supp. 3d 251, 261 n.6 (E.D.N.Y. 2014). But the court in *Tomasino* nevertheless found that the plaintiff's delay of "two to three years" in sending the defendant "a formal demand letter" before commencing her lawsuit "constituted unreasonable delay" in providing the defendant with notice of the alleged breach of warranty. *Id.* at 261. And the case on which *Tomasino* relies for the proposition that pleadings may constitute reasonable notice in certain circumstances, *Panda Capital Corp. v. Kopo International, Inc.*, itself found that the plaintiff had "repeatedly made objections to [the defendant]'s pattern of deficient performance" prior to filing its lawsuit. 662 N.Y.S.2d 584, 586 (App. Div. 1997). Thus, *Tomasino* and *Panda Capital* stand not for "the broad rule that a filed complaint qualifies as sufficient and timely notice," or that a "filed complaint, regardless of its temporal distance from the alleged breach of warranty, satisfies N.Y. U.C.C. § 2-607(3)(a)," but instead for the proposition that "timely notice is a condition *precedent* to bringing an action for breach of warranty . . . [and] [p]laintiffs must allege some form of timely, pre-litigation notice."

---

Sept. 28, 2000)—which itself relies on a case involving yet another product for human consumption—oral contraceptive pills, *Fischer v. Mead Johnson Lab'ys*, 341 N.Y.S.2d 257, 258 (App. Div. 1973).

*Lugones*, 440 F. Supp. 3d at 244–45 (emphasis in original) (citations omitted); *see also*
*MacNaughton*, 67 F.4th at 100–01 ("[I]n order to asse[r]t a claim for breach of an express or
implied warranty under New York law, 'a buyer must provide the seller with timely notice of the
alleged breach.' . . . The district court therefore did not err in concluding that [the plaintiff] failed
to provide [the defendant] with the requisite pre-suit notice under N.Y. U.C.C. § 2-607(3)(a)."
(second alteration in original) (quoting *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282
(S.D.N.Y. 2021))); *Lumbra v. Suja Life, LLC*, No. 22-cv-893, 2023 WL 3687425, at *7, 2023
U.S. Dist. LEXIS 92309, at *19 (N.D.N.Y. May 26, 2023) ("Plaintiff relies on [*Tomasino*] for
th[e] proposition [that filing an action serves as notice of an alleged breach of warranty] and thus
the Court will not apply an exception that is inapplicable to the facts of this case.").

Here, Plaintiff alleges he purchased one or more jerseys from Defendant "within the
statutes of limitations for each cause of action alleged . . . over the past three years, and/or among
other times." (Dkt. No. 1, ¶ 72.) Plaintiff then alleges that he "hereby provides notice to
Defendant that it has breached the express and implied warranties associated with the product."
(*Id.* ¶ 113.) These allegations are insufficient to establish that Plaintiff provided timely notice of
the alleged breach of warranty. *See MacNaughton*, 67 F.4th at 100–01. Accordingly, Plaintiff's
claim for breach of express warranty is dismissed.

### 4.    Breaches of Implied Warranties

Defendant argues that Plaintiff's claims for breaches of the implied warranty of
merchantability and the implied warranty of fitness for a particular purpose are also barred by
Plaintiff's failure to give pre-suit notice of the alleged breaches. The Court agrees. As with a
claim for breach of express warranty, timely notice of an alleged breach is necessary to assert a
claim for breach of an implied warranty under New York law. *See MacNaughton*, 67 F.4th at
100. As discussed with regard to Plaintiff's claim for breach of express warranty, Plaintiff

provided no pre-suit notice of the alleged breach of either implied warranty. Accordingly, Plaintiff's claims for breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose are dismissed.

### 5.    Negligent Misrepresentation

Defendant argues that Plaintiff's claim for negligent misrepresentation under New York common law should be dismissed because Plaintiff has not pleaded he had a "special relationship" with Defendant. (Dkt. No. 7-1, at 19–20.) Plaintiff argues that Defendant has "held itself out as having special knowledge and experience . . . to disclose and/or provide non-deceptive descriptions and marketing of the jerseys." (Dkt. No. 11, at 19 (internal quotation marks omitted).)

"Under New York law, in order to state a claim for negligent misrepresentation, a plaintiff must allege, '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011)). To plead the existence of a special relationship, a plaintiff must show that they were a "known party or parties." *Id.* (quoting *Sykes v. RFD Third Ave. 1 Assoc., LLC*, 15 N.Y.3d 370, 373 (2010)). A plaintiff's status as "one of a class of potential" recipients of a statement does not suffice to establish the existence of a special relationship. *See id.* (quoting *Westpac Banking Corp. v. Deschamps*, 66 N.Y.2d 16, 19 (1985)). But "a 'sparsely pled' special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in [*Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)].'" *Id.* (alteration in original) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)). Under *Kimmell*, "a claim

22

of negligent misrepresentation can succeed only where reliance on the alleged misrepresentation is justified," and in determining whether reliance was justified, a court "should consider whether the person making the representation held or appeared to hold unique or special expertise . . . and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Eternity Global Master Fund*, 375 F.3d at 188 (quoting *Kimmell*, 89 N.Y.2d at 263–64); *see also Credit All. Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985) (holding that, to establish a special relationship, (1) a defendant must be aware that information is to be used for a particular purpose; (2) "a known party or parties" intends to rely on that information; and (3) the defendant understood that that party's reliance on the information).

Here, Plaintiff makes no allegation tending to demonstrate the existence of a special relationship or the presence of any other *Kimmel* factor. Indeed, Plaintiff's only characterization of the alleged special relationship relies on Defendant's status as "the official manufacturer of NHL jerseys, . . . known as a leader in sportswear," with an "outsized role in the market for NHL jerseys." (Dkt. No. 11, at 19.) But a defendant's "status as a trusted brand . . . does not give rise to a duty to impart correct information, as the [P]laintiff[] [and the putative class] [are] 'a faceless or unresolved class' of consumers." *See Sarr v. BEF Foods, Inc.*, No. 18-cv-6409, 2020 WL 729883, at *6, 2020 U.S. Dist. LEXIS 25594, at *18 (E.D.N.Y. Feb. 13, 2020) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005) (per curiam)); *Credit All. Corp.*, 65 N.Y.2d at 551. Nor can "[t]he requisite special relationship. . . be based solely on [a] [d]efendant['s] status as a manufacturer of the [product] because, if this alone were sufficient, a special relationship would necessarily always exist . . . , which is not the case." *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 461 (S.D.N.Y. 2022) (alterations in original) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826, 2015 WL

23

5579872, at *25, 2015 U.S. Dist. LEXIS 126880, at *76–77 (E.D.N.Y. Sept. 22, 2015)). And the only case on which Plaintiff relies to establish the existence of a special relationship, *Abu Dhabi Commerical Bank v. Morgan Stanley & Co.*, examined a wholly distinguishable context involving a special relationship between, on the one side, a select group of known institutional investors and, on the other, the administrator of an investment vehicle and ratings agencies that provided to the investors ratings of the investment vehicle. *See* 910 F. Supp. 2d 543, 545–46 (S.D.N.Y. 2012). That case is plainly inapplicable here.

Thus, because Plaintiff has not plausibly alleged the existence of a special relationship with Defendant, Plaintiff's claim for negligent misrepresentation is dismissed.

### 6.    Fraud

Defendant argues that Plaintiff's claim for fraud under New York common law should be dismissed because Plaintiff has not pleaded his claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff has not plausibly alleged that Defendant exhibited any deceptive conduct, and the alleged omissions were readily discernible. (Dkt. No. 7-1, at 10–18.) Plaintiff argues that he has pleaded his claim for fraud with the particularity required by Rule 9(b) and that whether Defendant's use of the word "authentic" constitutes a misrepresentation is a question of fact not suitable for disposition by a motion to dismiss. (Dkt. No. 11, at 14–15, 20.)

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Valcarcel*, 577 F. Supp. 3d at 280 (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402-03 (2d Cir. 2015)). A claim for common-law fraud is subject to the particularity requirements of Rule 9(b) of the Federal Rules of Civil

Procedure, which require that the complaint "state with particularity the circumstances constituting fraud." *Id.* at 280–81 (quoting Fed. R. Civ. P. 9(b)); *see also MacNaughton*, 67 F.4th at 99. Specifically, Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 286–87 (S.D.N.Y. 2022) (quoting *Fin. Guar. Ins. Co.*, 783 F.3d at 403); *MacNaughton*, 67 F.4th at 99. While "Rule 9(b) permits scienter to be averred generally," the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Id.* at 281 (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017)). A "'strong inference' can be established either '(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Duran*, 450 F. Supp. 3d at 353).

Here, Plaintiff has not pleaded with particularity when Defendant's allegedly fraudulent statements were made or when or where Plaintiff purchased a jersey. The complaint does not identify the date of any of the allegedly misleading advertising. (Dkt. No. 1, ¶¶ 22–24.) Although Plaintiff claims that he read and relied on the Defendant's representations, (*id.* ¶ 74), he does not allege when or where he purchased the jerseys. Plaintiff merely states that he "purchased the Adidas authentic NHL jerseys described here within the statutes of limitations for each cause of action alleged, at stores and/or websites, including the website of Defendant, adidas.com and NHL.com, over the past three years, and/or among other times." (Dkt. No. 1, ¶ 72.) Plaintiff provides no more detail than this as to when (or how many times) in that three-year period he

purchased a jersey or from which of the sources—Plaintiff's list of which includes a third-party website—he purchased it. Nor does Plaintiff indicate when he viewed Defendant's website or when the screenshots of Defendant's website embedded in the complaint were taken. (Dkt. No. 1, ¶¶ 22–25.)

Plaintiff's vague allegations are insufficient to pass muster under Rule 9(b). *Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011) (dismissing a claim for fraud where the plaintiff "fail[ed] to allege when the fraud occurred and where the fraud took place, and instead just assert[ed] the fraud too place at 'all times mentioned herein'" (citation omitted)); *cf. MacNaughton*, 67 F.4th at 100 ("[T]hough [the plaintiff] alleges that all of [the defendant's] Products were marketed with false promises, she specifies that '[i]n the last four years, and specifically on or around February 2020' she purchased six of the [products] online."); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 567 (S.D.N.Y. 2017) (finding the plaintiffs had satisfied Rule 9(b) where "[e]ach of the four named Plaintiffs alleges . . . the location at which the item was purchased[] [and] the approximate date of the purchase"); *Jovel v. i-Health, Inc.*, No. 12-cv-5614, 2013 WL 5437065, at *11, 2013 U.S. Dist. LEXIS 139661, at *33–34 (E.D.N.Y. Sept. 27, 2013) (finding "ample particularization of [the plaintiff's] allegations" where the plaintiff identified "where the allegedly fraudulent statements were made, namely, at a particular Wal-Mart in Los Angeles," and "the specific time when she purchased [the product]"). Accordingly, Plaintiff's claim for fraud is dismissed.

### 7.    Unjust Enrichment

Defendant argues that Plaintiff's claim for unjust enrichment should be dismissed because "it is little more than a catchall in the even that [P]laintiff's other claims are not viable." (Dkt. No. 7-1, at 27.) Plaintiff apparently acknowledges that his unjust enrichment claim is

duplicative of other claims but argues that Rule 8(d)(2) of the Federal Rules of Civil Procedure allows him to plead alternative claims regardless of consistency. (Dkt. No. 11, at 20.)

"To state a claim for unjust enrichment under New York law a Plaintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Valcarcel*, 577 F. Supp. 3d at 283 (quoting *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021)). Where an "unjust enrichment claim 'sound[s] in fraud[,]'" a plaintiff "must satisfy th[e] heightened pleading standard" provided by Rule 9(b). *See MacNaughton*, 67 F.4th at 99 (first alteration in original) (quoting *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022)). Furthermore, "unjust enrichment is not a catchall cause of action to be used when others fail." *Valcarcel*, 577 F. Supp. 3d at 283 (quoting *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021)). That is, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). While Rule 8(d)(2) of the Federal Rules of Civil Procedure allows alternative pleading, even when "pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see also Valcarcel*, 577 F. Supp. 3d at 283 ("[A]n unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" (quoting *Campbell*, 516 F. Supp. 3d at 393)).

Here, Plaintiff's claim for unjust enrichment is limited to a single paragraph, which states that "Defendant obtained benefits and monies because the Product was not as represented and

expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Dkt. No. 1, ¶ 142.) Thus, it is clear that Plaintiff's unjust enrichment claim "is a mere repackaging" of his other claims based on Defendant's alleged misrepresentations about the jerseys because the claim relies on the same factual allegations as Plaintiff's other theories of recovery without explanation as to how it may differ. *See Warren*, 592 F. Supp. 3d at 287 (quoting *Campbell*, 516 F. Supp. 3d at 394); *see also Valcarcel*, 577 F. Supp. 3d at 283 ("Here, [the plaintiff] has offered no explanation of how its unjust enrichment claim differs from its other causes of action, 'which seek relief from the same conduct.' As such, the motion to dismiss [the plaintiff]'s unjust enrichment claim is granted." (quoting *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, 2015 WL 7018369, at *39, 2015 U.S. Dist. LEXIS 155383, at *109 (S.D.N.Y. Nov. 12, 2015))). Additionally, as discussed with regard to his claim for fraud, Plaintiff has not pleaded with sufficient particularity to satisfy the requirements of Rule 9(b) as he must because his unjust enrichment claim sounds in fraud, *see MacNaughton*, 67 F.4th at 99. Accordingly, Plaintiff's claim for unjust enrichment is dismissed.

### D.    Leave to Amend

In the alternative to the denial of Defendant's motion to dismiss, Plaintiff seeks leave to file an amended complaint. (Dkt. No. 11, at 20.) The Federal Rules of Civil Procedure provide that "leave to amend 'shall be freely given when justice so requires.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)). However, "leave to amend may be denied if . . . amendment would be futile." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)). "Amendment is futile if it fails 'to cure prior deficiencies.'" *Id.* (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Plaintiff has not suggested how he would amend the complaint and the Court is skeptical as to whether Plaintiff will be able to correct most of the deficiencies identified in this decision. However, in light of the fact that Plaintiff has requested leave to amend and has not yet had an opportunity to amend, the Court will permit amendment of the complaint.

V.    **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss, (Dkt. No. 7), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant's motion to dismiss is **GRANTED** as to Plaintiff's claims for breaches of the "Consumer Fraud Acts" of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska; express warranty; implied warranties of merchantability and fitness for a particular purpose; and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.; and claims for common-law negligent misrepresentation, fraud, and unjust enrichment; and it is further

**ORDERED** that Plaintiff's claims for breaches of the "Consumer Fraud Acts" of Maine, Michigan, Idaho, Wyoming, Indiana, North Dakota, and Nebraska; express warranty; implied warranties of merchantability and fitness for a particular purpose; and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.; and claims for common-law negligent misrepresentation, fraud, and unjust enrichment are **DISMISSED without prejudice** and **with leave to amend**; and it is further

**ORDERED** that Defendant's motion to dismiss is **DENIED** as to Plaintiff's claims under New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350; and it is further

**ORDERED** that any amended complaint must be filed within 21 days of the date of this

Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: September 1, 2023
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge